1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8    Pete Carl Rogovich,                )    No. CV-00-1896-PHX-ROS
                                         )
9                    Petitioner,         )    DEATH PENALTY CASE
                                         )
10   vs.                                 )
                                         )
11   Dora B. Schriro, et al.,            )    **MEMORANDUM OF DECISION**
                                         )    **AND ORDER**
12                   Respondents.        )
                                         )
13   _____ )

14

15          Peter Carl Rogovich ("Petitioner") filed an Amended Petition for Writ of Habeas

16   Corpus pursuant to 28 U.S.C. § 2254, alleging that he is imprisoned and sentenced to death

17   in violation of the United States Constitution.  (Dkt. 55.)[1]  In an Order dated June 6, 2006,

18   the Court found that the following claims were properly exhausted and would be addressed

19   on the merits: Claims 1 (in part), 2 (in part), 5, 6, 8 (in part), 9 (in part), and 10 (in part).

20   (Dkt. 151.)  The Court found that Claims 3 and 4 were procedurally defaulted, but ordered

21   briefing on the merits of the claims and the corresponding allegations of ineffective

22   assistance of appellate counsel as cause to excuse the default.  (*Id.*)  The parties have

23   completed their briefing.  (Dkts. 157, 169, 171.)  The Court has considered the claims and

24   concluded, for the reasons set forth herein, that Petitioner is not entitled to relief.

25   _____

26          [1]      "Dkt" refers to documents in this Court's file.  "ROA" refers to the documents
     filed in the Arizona Supreme Court during Petitioner's direct appeal (Case No. CR 95-0288-
27   AP).  "ME" refers to the minute entries of the trial court.  "RT" refers to the court reporter's
     transcripts.  Original reporter's transcripts and certified copies of the appellate and post-
28   conviction records were provided to this Court by the Arizona Supreme Court on July 3,
     2000.  (*See* Dkt. 31.)

**BACKGROUND**

On March 15, 1992, at around 8:30 a.m., Petitioner parked his car in the lot of his apartment complex in central Phoenix.[2]  On the way to his apartment, Petitioner spoke to a maintenance man, telling him that he was upset with his girlfriend and was going to get even with her.

At approximately 8:45 a.m., a customer entered a convenience store located near Petitioner's apartment and found the body of Tekleberhan Manna, the twenty-four-year-old clerk.  Manna had sustained a fatal gunshot wound to his right eye, fired from within two feet, causing instantaneous death.  No money or merchandise had been taken from the store.

Around 1:00 p.m. the same day, Petitioner exited his apartment with a gun in his hand and began firing into the parking lot.  At that time, Tony Madrid and Pamela Rodgers were leaving the apartment complex by car.  One of Petitioner's shots hit a rear tire of their vehicle.  When the couple exited the vehicle,  Petitioner fired at them but missed.  He then ran to the south side of the complex and jumped the fence separating the apartment complex from the neighboring trailer park.

At the trailer park, Petitioner shot and killed three women.  Phyllis Mancuso, age sixty-two, was shot once through her cheek and neck and died within minutes.  Rebecca Carreon, forty-eight, was shot once in the back and died from loss of blood also within a few minutes.  Eighty-three-year-old Marie Pendergast was shot twice in the abdomen and died from blood loss.

Petitioner was next seen running into an open field adjacent to the trailer park.  He later appeared at a restaurant parking lot where disc jockey Kelly Urich was doing promotional work for a radio station.  Petitioner took the radio station van from Urich at gunpoint and drove off.  He was next seen at a convenience store in Goodyear.  Inside the store, he grabbed two twelve-packs of beer from the cooler and approached the counter.  At

---

[2]     Except where otherwise noted, this background is derived the Arizona Supreme Court's opinion in *State v. Rogovich*, 188 Ariz. 38, 932 P.2d 794 (1997).

the counter, he put down his gun and quietly demanded, "Give me some money." The cashier handed him about forty-five dollars. Petitioner took the money, casually walked out to the van, and drove off.

At about 5:00 p.m. Goodyear police, responding to a call concerning the convenience store robbery, spotted the van and began a pursuit. After a lengthy, high speed chase, officers were finally able to stop him at a roadblock.

In subsequent interviews with the police, Petitioner admitted committing all of the offenses. He stated, "I did it. I know it was wrong. I know I'll burn in hell." When asked if he was sorry, Petitioner replied, "Of course, I'm sorry. It was wrong. I know it, but I just snapped. I was so angry. I just couldn't stop. I was full of anger."

The State charged Petitioner with four counts of first-degree murder, two counts of aggravated assault, two counts of armed robbery, and one count of unlawful flight from a law enforcement vehicle, and filed a notice of intent to seek the death penalty.

At arraignment, Petitioner pleaded not guilty. The trial court granted Petitioner's motions for a competency prescreening and a full psychiatric examination. Petitioner was found competent to stand trial.

At trial, Petitioner pursued an insanity defense. Two mental health experts examined Petitioner and testified for the defense. Dr. Paul Bindelglas, a psychiatrist, concluded that Petitioner suffered from acute psychosis – in particular, paranoid schizophrenia. Dr. Marc Walter, a clinical neuropsychologist, also concluded that Petitioner suffered from paranoid schizophrenia.

The State called two mental health experts. Dr. Alexander Don, a psychiatrist, concluded that Petitioner suffered only from a personality disorder, not a mental illness. Dr. Michael Bayless, a psychologist, concluded that Petitioner suffered only from phencyclidine (PCP) intoxication, not a thought or mental disorder.

Petitioner's trial commenced May 12, 1994. Both at the conclusion of the State's evidence and the trial, Petitioner moved for a judgment of acquittal. The court denied the

1    motions.  On June 1, 1994, after deliberating for just over five hours, the jurors convicted
2    Petitioner on all counts.

3         A sentencing hearing was held on May 12, June 2, and June 5, 1995.  The State
4    advanced three aggravating factors.  Petitioner sought to prove one statutory mitigating
5    circumstance and five nonstatutory mitigators.  The court found beyond a reasonable doubt
6    that Petitioner killed the four victims and that he intended to kill them.  Concluding that the
7    mitigating factors were not sufficiently substantial to call for leniency, the judge sentenced
8    Petitioner to death for the murders of Carreon, Mancuso, and Pendergast and to a life
9    sentence for the murder of Manna.  Petitioner's convictions and sentences were affirmed on
10   direct appeal.  *State v. Rogovich*, 188 Ariz. 38, 932 P.2d 794 (1997).

11        On May 3, 1999, Petitioner filed a petition for post-conviction relief ("PCR") pursuant
12   to Rule 32 of the Arizona Rules of Criminal Procedure.  (Dkt. 60, Ex. B.)  The PCR court
13   denied relief.  (Dkt. 60, Ex. E.)  The Arizona Supreme Court summarily denied a petition for
14   review from the denial of PCR relief.  (Dkt. 60, Exs. F, I.)

15        Petitioner commenced this action on October 5, 2000.  (Dkt. 1.)

16                          **AEDPA STANDARD FOR RELIEF**

17        Petitioner's habeas claims are governed by the applicable provisions of the
18   Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Lindh v. Murphy*, 521 U.S.
19   320, 336 (1997).  The AEDPA established a "substantially higher threshold for habeas relief"
20   with the "acknowledged purpose of 'reducing delays in the execution of state and federal
21   criminal sentences.'"  *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939-40 (2007) (quoting
22   *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).  The AEDPA's "'highly deferential
23   standard for evaluating state-court rulings' . . . demands that state-court decisions be given
24   the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)
25   (quoting *Lindh,* 521 U.S. at 333 n.7).

26        Under the AEDPA, a petitioner is not entitled to habeas relief on any claim
27   "adjudicated on the merits" by the state court unless that adjudication:

28

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 127 S. Ct. at 654; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law

set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  *Williams*, 529 U.S. at 406; *see Lambert*, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.  For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."  *Id.* at 409; *Landrigan*, 127 S. Ct. at 1939; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts.  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*).  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).   In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Landrigan*, 127 S. Ct. at 1939-40; *Miller-El*

1   *II*, 545 U.S. at 240.  However, it is only the state court's factual findings, not its ultimate

2   decision, that are subject to § 2254(e)(1)'s presumption of correctness.  *Miller-El I,* 537 U.S.

3   at 341-42 ("The clear and convincing evidence standard is found in § 2254(e)(1), but that

4   subsection pertains only to state-court determinations of factual issues, rather than

5   decisions.").

**DISCUSSION**

6

7   <u>Claim 1</u>

8       Petitioner alleges that his Confrontation Clause rights were violated by the testimony

9   of Dr. Phillip Keen, the Maricopa County Medical Examiner, whose opinions as to the

10  victims' cause of death were based on autopsy reports prepared by another pathologist, Dr.

11  Larry Shaw, who did not testify.   (Dkt. 157 at 14-18.)  Dr. Shaw prepared the autopsy

12  reports but was no longer on staff at the Medical Examiner's Office at the time of trial.  (RT

13  5/12/94 at 63-64.)  Dr. Keen's testimony was admitted over the objections of defense

14  counsel.  (*Id.* at 72.)

15      Considering this claim on direct appeal, the Arizona Supreme Court first found that

16  Dr. Keen's testimony was properly admitted as expert testimony under Rule 703 of the

17  Arizona Rules of Evidence, which allowed Dr. Keen to reasonably rely on Dr. Shaw's

18  findings.  *Rogovich*, 188 Ariz. at 41-42, 932 P.2d at 797-98.  The court then rejected

19  Petitioner's claim that his confrontation rights were violated by the testimony:

20          Citing *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638
21      (1990), Rogovich contends that the right of confrontation is satisfied only
        when evidence comes in under a firmly rooted hearsay exception.  Because
22      Rule 703 is not a hearsay exception, he says it is certainly not firmly rooted.

23          Admitting the substance of a non-testifying expert's opinion is not a
        hearsay use at all.  *Lundstrom,* 161 Ariz. at 148, 776 P.2d at 1074.  Facts or
24      data underlying the testifying expert's opinion are admissible for the limited
        purpose of showing the basis of that opinion, not to prove the truth of the
25      matter asserted.  *Id.*  Testimony not admitted to prove the truth of the matter
        asserted by an out-of-court declarant is not hearsay and does not violate the
26      confrontation clause.  *State v. Hernandez,* 170 Ariz. 301, 307, 823 P.2d 1309,
        1315 (App.1991). Thus, the defendant's confrontation right extends to the
27      testifying expert witness, not to those who do not testify but whose findings or
        research merely form the basis for the witness's testimony.  *See Reardon v.*
28      *Manson,* 806 F.2d 39, 42 (2d Cir.1986), *cert. denied,* 481 U.S. 1020, 107 S.Ct.

- 7 -

1903, 95 L.Ed.2d 509 (1987) ("Expert reliance upon the output of others does not necessarily violate the confrontation clause where the expert is available for questioning concerning the nature and reasonableness of his reliance.").

Rogovich confronted and cross-examined Dr. Keen.  Because Dr. Keen's testimonial reference to Dr. Shaw's autopsy reports was offered for purposes of showing the basis of Keen's opinion and not to prove the truth of the matter asserted, the testimony did not violate the confrontation clause.

*Id.* at 42, 932 P.2d at 798 (footnote omitted).

In support of this claim, Petitioner relies on *Crawford v. Washington*, 541 U.S. 36, 68 (2004), in which the Supreme Court, overruling *Ohio v. Roberts*, 488 U.S. 56 (1980), held that it is a violation of the Confrontation Clause to admit testimonial evidence at trial unless the declarant is unavailable and there was a prior opportunity to cross-examine him or her. Subsequently, however, in *Whorton v. Bockting*, 127 S. Ct. 1173, 1184 (2007), the Court concluded that *Crawford* does not apply retroactively to cases on collateral review.

In any event, Dr. Keen's testimony was properly admitted even under *Crawford*. First, as the Arizona Supreme Court explained, Dr. Shaw's findings were not used as hearsay – i.e., to prove the truth of the matters asserted.  *Rogovich*, 188 Ariz. at 42, 932 P.2d at 798; *see Crawford*, 541 U.S. at 59 n.9 (stating that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted").  Rather, the autopsy reports formed the basis of another expert's opinions, as allowed under Rule 703, and that expert, Dr. Keen, was subject to cross-examination.  *Id.*; *cf. Manocchio v. Moran*, 919 F.2d 770, 780 (1st Cir. 1990) (noting that medical examiners, like other physicians, "commonly base their opinions on tests and examinations performed by other physicians").  Moreover, Dr. Shaw's reports were not testimonial in nature and therefore not subject to *Crawford*.  *United States v. Feliz*, 467 F.3d 227, 229 (2d Cir. 2006), *cert. denied Erbo v. United States*, 127 S. Ct. 1323 (2007) (holding that "autopsy reports are not testimonial within the meaning of *Crawford* and, thus, do not come within the ambit of the Confrontation Clause").

Finally, even if Dr. Keen's testimony violated Petitioner's Confrontation Clause

rights, he would not be entitled to habeas relief because he was not prejudiced by the admission of the testimony.  The cause of the victims' deaths was not in doubt, and Petitioner identifies no beneficial information that could have been obtained from the cross-examination of Dr. Shaw as opposed to Dr. Keen.  *See Plascencia v. Alameida*, 467 F.3d 1190, 1202 (9th Cir. 2006) ("[E]ven if there was an isolated violation of Plascencia's right under the Confrontation Clause, that violation would not have had a 'substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Brecht*, 507 U.S. at 619); *Ford v. Curtis*, 277 F.3d 806, 810-11 (6th Cir. 2002) (Confrontation Clause violation subject to harmless error analysis under *Brecht*; therefore, petitioner entitled to relief only on a showing of actual prejudice); *Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998) (same).

Petitioner is not entitled to relief on Claim 1.

**Claim 2**

Arguing that the decision to present an insanity defense involves a waiver of fundamental constitutional rights, Petitioner alleges that his due process rights were violated by the trial court's failure to ascertain whether this waiver was knowing, intelligent, and voluntary.  (Dkt. 157 at 18-28.)

The Arizona Supreme Court denied this claim on direct appeal.  First, citing *State v. Hurles,* 185 Ariz. 199, 203, 914 P.2d 1291, 1295 (1996), the court rejected Petitioner's assertion that the invocation of the insanity defense "involves a concession of the State's basic facts, makes virtually any evidence relevant and admissible, and operates as a waiver of fundamental rights" such that an "affirmative, recorded agreement to its presentation" is required.  *Rogovich*, 188 Ariz. at 43, 932 P.2d at 799.  The court then explained that Petitioner's rights were not violated by the absence of an on-the-record waiver:

> Rogovich did not personally object to his lawyer presenting an insanity defense.  He was not only present at his competency hearing and at trial but was also examined by four mental health experts in response to his insanity claim.  Clearly, as in *Hurles,* failure of counsel to get express, on-the-record permission from Rogovich to advance the insanity defense is not fundamental error.  Given the facts, counsel's decision to raise the defense was certainly

reasonable.  Because Rogovich, who was present at all critical moments, failed to object, the claim is precluded. *Id.*

*Id.*

 In *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993), the Supreme Court reiterated that when a defendant seeks to plead guilty or waive his right to counsel the court must "satisfy itself" that the waiver is knowing and voluntary.   However, the Court rejected the argument that the competency standard for such a defendant is different or higher than the standard of competency to stand trial.  *Id.* at 398.  Here, Petitioner neither pleaded guilty nor waived his right to counsel, and he was found competent to stand trial.  Petitioner nevertheless contends that he is entitled to habeas relief based on the Arizona Supreme Court's unreasonable application of *Godinez*.  (Dkt. 157 at 27.)

According to Petitioner, proceeding with an insanity defense is tantamount to waiving "the right to presumption of innocence and the right to have the State prove every element beyond a reasonable doubt," and therefore the trial court was obligated to assure that Petitioner's waiver of these rights was knowing, intelligent, and voluntary.[3] (*Id.* at 25.)  The Court disagrees.

The trial court made a finding that Petitioner was competent.  Thus, even if the insanity defense did amount to a waiver of rights, by determining that Petitioner was competent for trial, the court likewise determined, pursuant to *Godinez*, that Petitioner was competent to make such a waiver.  Of course, as Respondents note, use of the insanity defense does not constitute such a waiver.  *See Clark v. Arizona*, 126 S. Ct. 2709, 2729 (2006) (explaining that the insanity defense does not waive the presumption of innocence or

---

[3]     Included in this claim is the allegation that Petitioner was not competent to offer an insanity defense. The Court agrees with Respondents that Petitioner did not fairly present this claim in state court.  In fact, on direct appeal Petitioner conceded that, based on the trial court's determination that he was competent, "there was no question that he was able" to waive his rights and proceed with an insanity defense.  (Opening Brief at 18 n.5.) Because Petitioner's claim of incompetence is procedurally defaulted, and Petitioner has not attempted to demonstrate either cause and prejudice or a fundamental miscarriage of justice to excuse the default, the Court will not address its merits.

relieve the State of its burden of proving every element of the offense beyond a reasonable doubt); *Leland v. Oregon*, 343 U.S. 790, 794 (1952) (statute requiring defendant to prove insanity beyond a reasonable doubt did not affect the State's burden "to prove beyond a reasonable doubt every element of the crime charged"). Finally, Petitioner offers no support for his assertion that the choice of a defense theory must be made on the record and approved by the court.

The Arizona Supreme Court's failure to extend the holding in *Godinez* to cover a defendant's decision to proceed with an insanity defense was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to relief on Claim 2.

**Procedurally Defaulted Claims: Claims 3 and 4**

The Court previously found that Claims 3 and 4 were procedurally defaulted. (Dkt. 151.) In response to Petitioner's assertion that ineffective assistance of appellate counsel establishes cause to overcome the procedural default, the Court ordered Petitioner to address the merits of the underlying claims as well as the merits of his cause and prejudice argument. (*Id.*)

Where ineffective assistance of appellate counsel is raised as cause for excusing a procedural default, application of *Strickland v. Washington*, 466 U.S. 668 (1984), requires the Court to look to the merits of the omitted issue. *Hain v. Gibson,* 287 F.3d 1224, 1231 (10th Cir. 2002); *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995) (to determine if appellate counsel provided ineffective assistance by failing to raise an issue on appeal "we examine the merits of the omitted issue"). If the omitted issue is meritless, counsel's failure to appeal does not constitute a Sixth Amendment deprivation. *Cook* 45 F.3d at 392-93. Because, as set forth below, the Court has determined that these claims are without merit, the Court need not determine whether ineffective assistance of appellate counsel caused their

1    default.[4]

2        **Claim 3**

3        Petitioner alleges that the State's failure to collect breath, blood, or urine samples from

4    him, despite knowledge that he may have been intoxicated at the time of his crimes and

5    arrest, violated his rights under the Fourteenth Amendment.  (Dkt. 157 at 28-37.)

6        Background:

7        When Petitioner was apprehended, at approximately 5:30 p.m., officers were aware

8    that he had stolen beer from a convenience store.  (RT 5/18/94 at 68.)  In the stolen van

9    driven by Petitioner, officers discovered two twelve-packs of beer; three cans were missing

10   from one of the packs, and one empty beer can was found in the vehicle.  (*Id.* at 12, 187.)

11   One officer involved in Petitioner's arrest testified that Petitioner displayed "the outward

12   signs of alcohol impairment," including bloodshot, watery eyes and the odor of alcohol.  (*Id.*

13   at 65-66.)  Another officer, however, observed nothing that would indicate that alcohol was

14   involved in Petitioner's actions.  (*Id.* at 39.)  While fleeing from the police, Petitioner was

15   able to operate his vehicle at high speeds on the winding road through the White Tank

16   Mountains.  (*Id.* at 18.)  During his arrest and while he was being transported to Phoenix,

17   Petitioner was calm and cooperative and engaged in rational conversation with the officers.

18   (*Id.* at 57-59, 67.)

19       When he arrived at the Phoenix Police Department, Petitioner was interviewed by

20   Detective Hodges.  The interview began at approximately 7:20 p.m. and lasted two hours.

21   (*Id.* at 140.)  Petitioner was coherent and alert and his physical condition seemed "normal,"

22   although he was thirsty and became drowsy toward the end of the interview.  (*Id.* at 160.)

23   In response to Detective Hodges's question, Petitioner acknowledged that he had problems

24   with drugs and alcohol and that he was in treatment.  (*Id.* at 161.)  He informed Detective

25   Hodges that he had been drinking the day before but had not used cocaine.  (*Id.*)  He also told

26   
_____

27       [4]    The PCR court rejected Petitioner's claims of trial and appellate ineffective
28   assistance.  (ME 9/29/99.)

the detective that he had stolen the beer to help him "mellow out." (*Id.* at 154.) Because his observations provided "no indication of either alcohol or drug influence," Detective Hodges did not seek breath, blood, or urine samples from Petitioner. (*Id.* at 199.)

Petitioner presented an insanity defense at the guilt stage of trial. Pursuant to that defense, he offered evidence that his conduct was the product of a mental disorder rather than intoxication. (*See, e.g.*, 5/23/94 at 29, 75, 91.) This strategy reflected the fact that intoxication was not a defense to the first-degree murder charges, which alleged a mental state of "knowing" rather than "intentional."[5] Nevertheless, substantial evidence of Petitioner's drug and alcohol use prior to his crime spree was presented through the testimony of both lay and expert witnesses. Because evidence of intoxication was inimical to the insanity defense, it was the State, rather than Petitioner, that presented such information during the guilt stage of trial.[6] (*See, e.g.*, RT 5/24/94 at 70-72.) Through this testimony the jury was informed that Petitioner drank a case of beer the day before the killings, injected and smoked cocaine later that night, and smoked a PCP-laced cigarette at 5:00 a.m. (*Id.*)

Analysis:

The Due Process Clause of the Fourteenth Amendment imposes a duty on the government to preserve evidence that "might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). Under this standard,

---

[5]     At the time of Petitioner's offenses, a jury could consider a defendant's voluntary intoxication only when the mental state of "intentionally or with the intent to is a necessary element" of the offense. A.R.S. § 13-503 (West 1989) (repealed by Laws 1993, Ch. 256, § 3, eff. Jan. 2, 1994); *see State v. Ramos*, 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982) (evidence of intoxication allowed to negate the mental state of "intentionally" but not the mental state of "knowingly"). Therefore, as Petitioner acknowledges, evidence of intoxication would have been relevant only to the aggravated assault and armed robbery charges.

[6]     Under Arizona law, insanity is not available as a defense when the insanity is caused or aggravated by voluntary intoxication. *See State v. Hudson,* 152 Ariz. 121, 126, 730 P.2d 830, 835 (1986). The trial court so instructed the jury. (RT 5/31/94 at 184-85.)

- 13 -

1   "evidence must both possess an exculpatory value that was apparent before the evidence was

2   destroyed and be of such a nature that the defendant would be unable to obtain comparable

3   evidence by other reasonably available means." *Id.* at 489.  The Ninth Circuit has explained

4   that "[t]he mere failure to preserve evidence which could have been subjected to tests which

5   might have exonerated the defendant does not constitute a due process violation." *Paradis*

6   *v. Arave*, 954 F.2d 1483, 1488 (9th Cir. 1992), *vacated and remanded on other grounds*, 507

7   U.S. 1026 (1993); *see Villafuerte v. Stewart*, 111 F.3d 616, 625 (9th Cir. 1997) (per curiam)

8   (police do not have a "constitutional duty to perform all tests desired" by a suspect) (citing

9   *Arizona v. Youngblood,* 488 U.S. 51, 59 (1988)); *see also Garrett v. Lynaugh*, 842 F.2d 113,

10  116 (5th Cir. 1988) ("*Trombetta* does not require a state to conduct its investigation in any

11  particular way or perform tests on raw data in any particular order. Nor does it require a state

12  to conduct additional or more comprehensive tests.").  In *Paradis*, the Ninth Circuit court

13  further noted that in *Youngblood* the Supreme Court "strongly disagreed that 'the Due

14  Process Clause is violated when the police fail to use a particular investigatory tool.'" *Id.*

15  (quoting *Youngblood*, 488 U.S. at 59).

16          To establish a due process violation with respect to the preservation of evidence that

17  is only potentially exculpatory, a petitioner must demonstrate that the government acted in

18  bad faith.  *Youngblood*, 488 U.S. at 57-58.  As noted, evidence revealing the presence of

19  drugs or alcohol in Petitioner's system at the time of his arrest was potentially exculpatory

20  only with respect to the assault and robbery charges.  Such evidence was not exculpatory

21  with respect to the first-degree murder charges in light of the "knowing" mental state charged

22  by the prosecution.  *See* A.R.S. § 13-503 (West 1989) (repealed by Laws 1993, Ch. 256, §

23  3, eff. Jan. 2, 1994) (prohibiting intoxication as a defense to any mental state except specific

24  intent).  In the context of an insanity defense, evidence that Petitioner was intoxicated when

25  he committed the crimes would have damaged the defense case.  *See State v. Hudson*, 152

26  Ariz. 121, 126, 730 P.2d 830, 835 (1986) (stating that insanity defense not available to

27  defendant whose voluntary use of intoxicant aggravates pre-existing mental disorder or

28

1    creates temporary mental incapacity).  Given this dynamic, it is unclear whether the evidence
2    at issue is properly characterized as even potentially exculpatory.  Assuming that such
3    evidence is properly categorized as exculpatory, Petitioner must show that the police acted
4    in bad faith by failing to test Petitioner's blood, breath, or urine.

5            Petitioner cannot make this showing.  He has not demonstrated that the police acted
6    with "animus" or engaged in "a conscious effort to suppress exculpatory evidence."
7    *Trombetta*, 467 U.S. at 488.  The investigators' conduct bears no relationship, for example,
8    to that described in *Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989), cited by Petitioner.  In
9    *Miller*, the court found that the petitioner had presented a colorable claim that the
10   investigating officer acted in bad faith when he failed to collect the rape victim's blood-
11   stained jacket and failed to photograph scratches on the petitioner's arms.  *Id.* at 1121.  The
12   record contained evidence that the officer acted in bad faith – e.g., he referred to the
13   petitioner using "an extremely derogative expletive," lied about his knowledge of the bloody
14   jacket, and tried to dissuade witnesses from testifying in the defendant's favor.  *Id.*

15           Petitioner's only argument in support of his claim that the police acted in bad faith is
16   his contention that some of the arresting officers were on notice of Petitioner's intoxicated
17   condition.  As described above, evidence that Petitioner was under the influence of drugs or
18   alcohol was equivocal.  In addition, as Respondents note, the officers were under no duty to
19   collect samples.  *See State v. Rivera*, 152 Ariz. 507, 511-12, 733 P.2d 1090, 1094-95 (1987).
20   In *Rivera*, the defendant, convicted of first-degree murder, argued that his due process rights
21   were violated by the State's failure to test his blood-alcohol level at the time of his arrest.
22   *Id.* at 1094.  The Arizona Supreme Court rejected this claim, explaining that "the State does
23   not have an affirmative duty to seek out and gain possession of potentially exculpatory
24   evidence."[7]  *Id.*

25

26           [7]      The holding in *Rivera* foreclosed relief on this claim from the Arizona Supreme
27   Court and thus appellate counsel did not perform deficiently by failing to raise the issue on
     direct appeal.  Therefore, the procedural default of this claim is not excused.
28

1    Because the police did not have a duty to gather evidence of Petitioner's possible

2    intoxication, their failure to do so did not constitute bad faith.  Having failed to show that the

3    State acted in bad faith by neglecting to test for drugs or alcohol, Petitioner cannot establish

4    a due process violation.  Claim 3 is without merit and will be denied.

5    **Claim 4**

6    Petitioner challenges his aggravated assault convictions, alleging that the evidence

7    presented at trial violated his right to confront witnesses and was insufficient to support the

8    convictions.  (Dkt. 157 at 38-50.)

9    Background:

10   Petitioner was convicted of aggravated assault against Tony Madrid and Pamela

11   Rogers.  The charges arose from the shooting incident in the parking lot of Petitioner's

12   apartment building.

13   At trial, Mr. Madrid testified to statements made by Ms. Rogers, who did not testify.

14   Defense counsel objected on hearsay grounds, but the court overruled the objections, finding

15   that the statements were excited utterances.  (RT 5/12/94 at 138.)

16   Mr. Madrid testified that he heard a noise that sounded like a car backfiring; he exited

17   the car to investigate and discovered that one of his tires was flat.  (*Id.* at 137.)  While

18   checking his vehicle, he continued to hear the noises.  (*Id.*)  When he reentered the vehicle,

19   Ms. Rogers told him that she saw someone on the balcony of the apartment building pointing

20   a gun at him and firing.  (*Id.* at 138.)  Upon hearing this information, Mr. Madrid became

21   "scared."  (*Id.* at 142.)  Mr. Madrid then saw someone carrying a gun and running toward the

22   stairs.  (*Id.* at 149.)  A few minutes later, according to Mr. Madrid's testimony, Ms. Rogers

23   told him that during the incident she had felt pressure and heard the sound of a bullet passing

24   by her.  (*Id.* at 146.)  Mr. Madrid testified that Ms. Rogers was "frantic" and crying when she

25   made her statements to him.  (*Id.* at 138, 142.)

26   Admissibility of testimony:

27   As noted above, at the time of Petitioner's convictions, the controlling law was

28

defined by *Ohio v. Roberts*, which conditioned "the admissibility of all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford*, 541 U.S. at 40 (quoting *Roberts*, 448 U.S. at 66).  So-called "excited utterances" were considered to be a firmly rooted hearsay exception and the admission of such testimony did not, as a general rule, violate the Confrontation Clause. *See, e.g.*, *State v. Bible*, 175 Ariz. 549, 596, 858 P.2d 1153, 1199 (1993).

While it is not the role of a federal habeas court to "reexamine" the trial court's application of state evidentiary rules, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), it is clear that Ms. Rogers's statements satisfied the excited-utterance exception; Petitioner does not contend otherwise.  Ms. Rogers was frantic and crying as she informed Mr. Rogers that they were being shot at.  Her comments were spontaneous and made without the opportunity for reflection.  They were also corroborated by undisputed evidence that Petitioner fired toward the couple.  *Compare Winzer v. Hall*, 494 F.3d 1192, 1200 (9th Cir. 2007) (statement made to officer five hours after incident was not an excited utterance; declarant had time to reflect on her statement and, beyond the fact that she appeared upset, there were no indicia of the statement's reliability).

Because Ms. Rogers's statements were properly admitted under the excited-utterance exception to the hearsay rule, there was no Confrontation Clause violation.[8]

Sufficiency of evidence:

The Supreme Court has held that in reviewing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Petitioner was charged with two counts of aggravated assault under A.R.S. §§ 13-

---

[8]     Moreover, as Respondents note, Petitioner was not prejudiced with respect to sentencing for the first-degree murder convictions because, even absent the aggravated assault convictions, the aggravating factor set forth in A.R.S. § 13-703(F)(2) was satisfied by Petitioner's armed robbery convictions.

1    1203(A)(2) and 1204(A)(2), which required the State to prove that Petitioner intentionally

2    placed another person in reasonable apprehension of imminent physical injury while using

3    a deadly weapon.  The evidence showed that Petitioner fired toward the victims, hitting their

4    vehicle; that Ms. Rogers witnessed the shots and told Mr. Madrid; and that both individuals

5    experienced fear, Ms. Rogers while the shots were being fired and Mr. Madrid in the

6    following moments.  Viewing this evidence in the light most favorable to the State, a rational

7    juror could have concluded that Petitioner was guilty of aggravated assault.

8         For the reasons set forth above, the issues raised in Claim 4 are without merit and do

9    not entitle Petitioner to habeas relief.

10        **Ineffective Assistance of Appellate Counsel: Claims 5, 6, 8, 9, and 10**

11        Petitioner contends that the performance of appellate counsel, who raised only three

12   issues on direct appeal, was constitutionally ineffective.

13        The Fourteenth Amendment guarantees a criminal defendant the effective assistance

14   of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). A claim

15   of ineffective assistance of appellate counsel is reviewed according to the standard set out

16   in *Strickland*, 466 U.S. 668.  *See Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

17   Under *Strickland*, a petitioner must show that counsel's appellate advocacy fell below an

18   objective standard of reasonableness, and that there is a reasonable probability that, but for

19   counsel's deficient performance, the petitioner would have prevailed on appeal.  *Smith v.*

20   *Robbins*, 528 U.S. 259, 285-86 (2000); *see Miller*, 882 F.2d at 1434 n.9 (citing *Strickland*,

21   466 U.S. at 688, 694).  Moreover, the AEDPA imposes an additional layer of deference on

22   a reviewing court, so that, to be entitled to habeas relief on an ineffective assistance claim,

23   a petitioner must show that the state court's rejection of the claim was objectively

24   unreasonable.  *See* 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 535 U.S. 685, 699 (2002); *Visciotti*,

25   537 U.S. at 25.

26        "A failure to raise untenable issues on appeal does not fall below the *Strickland*

27   standard."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002); *see also Wildman v.*

28

- 18 -

*Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (appellate counsel could not be found to have rendered ineffective assistance for failing to raise issues that "are without merit"); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985). Moreover, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a petitioner. *Miller*, 882 F.2d at 1434 n.10 (citing *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983)); *see Smith v. Stewart*, 140 F.3d at 1274 n.4 (counsel not required to file "kitchen-sink briefs" because doing so "is not necessary, and is not even particularly good appellate advocacy"). Courts have frequently observed that the "weeding out of weaker issues is . . . one of the hallmarks of effective appellate advocacy." *Miller*, 882 F.2d at 1434; *see Smith v. Murray*, 477 U.S. 527, 536 (1986). Therefore, even if appellate counsel declines to raise weak issues, counsel will likely remain above an objective standard of competence and will have caused no prejudice. *Id.*

As previously noted, the PCR court rejected Petitioner's claims of ineffective assistance of appellate counsel, finding that the claims failed to satisfy either the deficient performance or prejudice prong of *Strickland*. (ME 9/29/99.) This determination does not constitute an unreasonable application of clearly established federal law because the issues appellate counsel failed to raise were without merit.

**Claim 5**

Petitioner asserts that he is entitled to relief based upon the cumulative effect of the individual instances of ineffective appellate assistance alleged in the remaining claims. (Dkt. 157 at 50-55.) Because, as set forth below, each individual claim of ineffectiveness fails to satisfy either prong under *Strickland*, there is no cumulative prejudicial effect from the challenged aspects of appellate counsel's performance.

**Claim 6**

Petitioner contends that the trial court erroneously found the existence of an aggravating factor, A.R.S. § 13-703(F)(8), that was not noticed prior to trial or proven at the sentencing hearing. (Dkt. 157 at 56-66.) Claim 6 alleges that appellate counsel performed

1   ineffectively by failing to challenge the applicability of the (F)(8) or (F)(1) aggravators.[9]

2   (*Id.*)

3        Background:

4        In sentencing Petitioner to death for the murders of Rebecca Carreon, Phyllis

5   Mancuso, and Marie Pendergast, the trial court found that the State had proved three

6   aggravating factors: A.R.S. § 13-703 (F)(1), based upon the murder of Tekleberhan Manna;

7   (F)(2), based upon the armed robbery and aggravated assault convictions, which were entered

8   prior to sentencing;[10] and (F)(8), for the continuous course of conduct in which the three

9   trailer park victims were killed.  (ROA 197.)  In sentencing Petitioner for the murder of

10   Tekleberhan Manna, the court found that only the (F)(2) aggravating circumstance applied

11   and concluded that the mitigating circumstances were sufficiently substantial to call for

12   leniency.  (*Id.*)

13        At sentencing, Petitioner offered a single statutory mitigating circumstance – that at

14   the time of the murders his "capacity to appreciate the wrongfulness of his conduct or to

15   conform his conduct to the requirements of the law was significantly impaired" pursuant to

16   A.R.S. § 13-703(C)(1).  (ROA 191.)  He also offered five non-statutory mitigators:

17   dysfunctional home life and difficult early years; lack of serious prior criminal record; good

18   employment history; good behavior while incarcerated; and admission of guilt and feelings

19   of remorse.  (*Id.*)  The trial court found that Petitioner had proven all of the non-statutory

20   mitigators but failed to prove the statutory circumstance that his capacity to appreciate the

21   wrongfulness of his conduct was impaired.   (ROA 197.)

22

23        [9]    A.R.S. § 13-703(F)(8) sets forth the following aggravating factor: "The
     defendant has been convicted of one or more homicides . . . that were committed during the
24   commission of the offense."  Under § 13-703(F)(1), it is an aggravating factor if "[t]he
     defendant has been convicted of another offense in the United States for which under
25   Arizona law a sentence of life imprisonment or death was imposable."

26        [10]   At the time of Petitioner's conviction, A.R.S. § 13-703(F)(2) provided that the
27   aggravating circumstance was present if "[t]he defendant was previously convicted of a
     felony in the United States involving the use or threat of violence on another person."
28

1    In affirming the death sentences on direct appeal, the Arizona Supreme Court agreed

2    with the trial court's findings and concluded that "the quality and magnitude of the mitigating

3    circumstances are [not] sufficient to warrant leniency.  A life sentence would not be more

4    appropriate under the circumstances of this case." *Rogovich*, 188 Ariz. 45-46, 932 P.2d 801-

5    02.

6    <u>Analysis:</u>

7    In its independent review of Petitioner's sentence, the Arizona Supreme Court upheld

8    the trial court's application of the (F)(8) factor based upon the close temporal, spatial, and

9    motivational relationship between the Carreon, Mancuso, and Pendergast murders.

10   *Rogovich*, 188 Ariz. 45, 932 P.2d 801.  The court explained that "[g]iven Rogovich's

11   continuous course of conduct, the judge correctly found this aggravating circumstance with

12   respect to the trailer park killings only."  *Id.*  Nonetheless, Petitioner contends that appellate

13   counsel performed ineffectively by failing to argue that the factor was not properly noticed

14   by the State or proved at the sentencing hearing.  This contention is unpersuasive.

15   Petitioner asserts that the State alleged the (F)(8) and (F)(1) aggravating factors only

16   in the alternative, that the trial court was constrained by that allegation, and that the State

17   waived application of the factor by failing to support it with evidence at the sentencing

18   hearing.  Defense counsel made these arguments to the trial court.  (*See* ROA 191 at 9-10;

19   RT 6/2/95 at 4-10.)  The court rejected them, finding that the defense had "sufficient notice

20   to meet the allegation of (F)(8)."  (RT 6/2/95 at 15.)  This court agrees.  The State

21   consistently alleged that the (F)(8) aggravating circumstance was applicable to the trailer

22   park murders.  (*See* ROA 169 at 2-3, 192 at 7.)

23   Furthermore, the Arizona Supreme Court had previously rejected a similar claim.  In

24   *State v. Cook*, 170 Ariz. 40, 63, 821 P.2d 731, 754 (1991), the court found that the defendant

25   was not entitled to relief despite the prosecutor's failure to notice the (F)(8) factor.  The court

26   rejected the claim because "the fact of Cook's two murder convictions was evident from the

27   verdict itself, so there was nothing for Cook to rebut.  Under these circumstances, it is

28

1   obvious that the prosecutor's failure to notify Cook about this aggravating circumstance did

2   not prejudice Cook in any way." *Id.*

3        In Petitioner's case, the prosecutor did provide notice of the (F)(8) factor, and the

4   incontestable evidence presented at trial proved that Petitioner committed multiple homicides

5   at a single location within a brief time-span. Given these circumstances, together with the

6   rejection of a similar claim in *Cook*, appellate counsel did not perform deficiently by failing

7   to raise this issue.

8        In any event, Petitioner was not prejudiced by appellate counsel's performance

9   because the Arizona Supreme Court independently reviewed the record and concluded that

10  the (F)(8) aggravating circumstance had been established. Therefore, there is no reasonable

11  probability that the outcome of Petitioner's appeal would not have been any different had this

12  issue been raised by appellate counsel.

13       Petitioner has failed to show that the PCR court unreasonably applied *Strickland* in

14  rejecting this claim. Claim 6 is denied.

15  **Claim 8**

16       Petitioner contends that he was entitled to a jury instruction on disorderly conduct as

17  a lesser-included offense of aggravated assault.[11] Claim 8 alleges ineffective assistance based

18  on counsel's failure to raise this issue on appeal. (Dkt. 157 at 66-72.)

19       "An instruction on a lesser-included offense is proper if the crime is in fact a lesser-

20  included offense to the one charged and if the evidence supports the giving of the lesser-

21  included instruction." *State v. Madrid*, 200 Ariz. 67, 68, 22 P.2d 506, 507 (2001). Here, the

22  evidence did not support an instruction on the lesser offense.

23       A person commits disorderly conduct if, "with intent to disturb the peace or quiet of

24  a neighborhood, family or person, or with knowledge of doing so," that person "[r]ecklessly

25  handles, displays or discharges a deadly weapon or dangerous instrument." A.R.S. § 13-

26

27  ─────────────

28       [11]    Trial counsel did not request the instruction.

2904(A)(6).   As described above, the uncontradicted evidence at trial indicated that Petitioner, having already shot one victim to death, pointed his gun and fired at Mr. Madrid and Ms. Rogers, hitting their vehicle and narrowly missing Ms. Rogers, leaving the victims frantic and scared, before running off to commit three additional fatal shootings.  In contrast to *Miranda*, where there was contradictory evidence as to whether the defendant pointed his weapon and fired at the complaining witness or whether he fired only once into the ground, the evidence at Petitioner's trial would not allow jurors to draw "conflicting inferences" about Petitioner's conduct.  *Miranda*, 200 Ariz. at 68, 22 P.2d at 507.  Principally, the evidence would not allow a juror to conclude that Petitioner, in shooting at Mr. Madrid and Ms. Rogers, was merely acting recklessly and that he intended only to disturb their peace or quiet.  *See State v. Lara*, 183 Ariz. 233, 235, 902 P.2d 1337, 1339 (1995) (defendant convicted of aggravated assault for lunging and slashing at the victim with a knife was not entitled to a disorderly conduct instruction because it was "not possible that the jury could have found that [the victim] was only disturbed").

Because the lesser-included instruction was not warranted, appellate counsel did not perform deficiently by failing to raise the issue.  Therefore, the PCR court's rejection of this claim was not an unreasonable application of *Strickland*, and Claim 8 is without merit.

**Claim 9**

Petitioner contends that the court erred by admitting irrelevant victim impact evidence during the guilt phase of trial.  Claim 9 alleges ineffectiveness of appellate counsel based on counsel's failure to raise this issue on appeal.  (Dkt. 157 at 73-78.)

Over defense counsel's objection, the trial court allowed the prosecutor to ask a relative or friend of each victim a very limited set of background questions, including how he or she was related to the victim, what family members survived the victim, and the victim's age at the time of his or her death.  (RT 5/18/94 at 73-77.)  Each witness was also allowed to identify a "small" photograph of the victim.  (*Id.* at 80-87, 129-30.)

In *State v. Doerr*, 193 Ariz. 56, 63-64, 969 P.2d 1168, 1175-76 (1998), decided after

1    Petitioner's trial and appeal but prior to the PCR court's rejection of his ineffective-

2    assistance claims, the Arizona Supreme Court, in a case of "first impression," held that the

3    admission of an enlarged "in-life" photograph of the victim constituted harmless error.  The

4    court declined, however, to "adopt an inflexible rule that 'in-life' photographs are always

5    inadmissible in homicide cases."  *Id.* at 64, 969 P.2d at 1176; *see also State v. Ellison*, 213

6    Ariz. 116, 141, 140 P.3d 899, 924 (2006) (court did not abuse its discretion during penalty

7    phase of capital murder trial by allowing the jurors to take into their deliberations one in-life

8    photograph of each victim, where such photographs were "benign" compared to the victims'

9    post-death photographs).

10   Even if appellate counsel had anticipated the holding in *Doerr* and challenged the

11   admission of the photographs and testimony, it is clear that admission of the evidence would

12   have been found to constitute, at most, harmless error.  The testimony was very brief and

13   consisted of innocuous biographical information; the pictures were small and benign

14   compared with the properly-admitted photographs of the bodies at the crime scenes.

15   Appellate counsel did not perform deficiently by failing to raise the issue.  Therefore,

16   the PCR court's rejection of this claim was not an unreasonable application of *Strickland*.

17   Claim 9 is denied.

18   **Claim 10**

19   Petitioner alleges that appellate counsel failed to raise and preserve challenges to the

20   prosecutor's improper closing argument, in which he implied that a verdict of not guilty by

21   reason of insanity would result in Petitioner's immediate release. (Dkt. 157 at 78-84.)

22   During closing arguments, the prosecutor and defense counsel each addressed the jury

23   twice, with the second set of arguments focusing on Petitioner's insanity defense.  The

24   challenged comments occurred during the prosecutor's second argument, in which he

25   remarked:

26          But the Defense has to prove to you now that he had a mental illness
         and because of that mental illness, he was insane.  A legal term, he was insane.
27       He did not know the nature and quality of his act, or if he did know that, that
         he didn't know that it was wrong.  They have to prove it.  They have to prove

28

- 24 -

it by clear and convincing evidence.  Not guilty by reason of insanity is still not guilty.  That's what it means, not guilty.

(RT 5/31/94 at 131-32.)  The prosecutor then stated that the defense was "asking you to find this man not guilty by reason of insanity.  That's not guilty for taking away four of our citizens." (*Id.* at 132-33.)

According to Petitioner, these remarks "were designed to raise the inference in the minds of the jurors that to accept the defense as presented would somehow lead to Petitioner's freedom because he would effectively be found not guilty" and "[h]ad appellate counsel challenged the prosecutor's misconduct, there is a reasonable probability that [Petitioner] would have prevailed on direct appeal."  (Dkt. 157 at 79, 81.)

In the interval between the prosecutor's closing argument and defense counsel's final argument, counsel informed the trial court of his concerns about the prosecutor's comments, which he characterized as inappropriately conveying to the jury that a verdict of not guilty by reason of insanity would allow Petitioner to walk out of the courtroom.  (RT 5/31/94 at 151-52.)  Counsel requested that he be allowed to inform the jurors that such a verdict would not result in Petitioner's release.  (*Id.*)  In response, the prosecutor indicated that his statements were not a reference to Petitioner being released but instead a comment on the defense's burden of proof on the insanity defense.  (*Id.* at 152-53.)  The judge agreed, stating that he did not believe that the prosecutor's statements "related in any way, shape or form" to an improper comment on the effect of a verdict of not guilty by reason of insanity.  (*Id.* at 153.)

The Court agrees with the trial judge's characterization.  Unlike other cases where prosecutorial misconduct occurred, the prosecutor here never suggested that Petitioner would be released if the jury found him insane.  *See, e.g.*, *State v. Jordan*, 80 Ariz. 193, 197, 294 P.2d 677, 680 (1956) ("If you bring in a verdict of not guilty by reason of insanity, he can't be punished and I can't lock him up. . . . He will be out on the streets and maybe down at the Club Esquire drinking beer tomorrow night."); *see also State v. Cornell*, 179 Ariz. 314, 326,

878 P.2d 1352, 1364 (1994) (no fundamental error despite prosecutor's questioning of psychologist who opined that defendant had been temporarily insane; prosecutor asked, "So, in other words, even though you assumed that he shot [the victim], shot her father and did whatever else he did by way of waving the gun around, he should walk out of the courtroom a free man?").

In Petitioner's case, it is clear that the prosecutor's remarks, when viewed in context, properly addressed Petitioner's burden of proof with respect to the insanity defense. *See State v. Hughes*, 193 Ariz. 72, 88, 969 P.2d 1184, 1200 (1998) (noting the "wide latitude" afforded closing arguments and explaining that "[a] prosecutor can certainly argue that Defendant has the burden of proving insanity by clear and convincing evidence, for that is the law"). Moreover, any prejudice from the comments was reduced when defense counsel, in his final argument, responded to the prosecutor's remarks, discussing at length the principles underpinning the insanity defense and arguing in support of its application to Petitioner's case. (*Id.* at 154-76.) In addition, at the end of the closing arguments, the court instructed the jury on the parties' respective burdens of proof and reiterated that what the lawyers said in their arguments was not evidence. (*Id.* at 178-79, 184-85.)

Because the prosecutor's comments were not improper or prejudicial to Petitioner, appellate counsel did not perform deficiently by failing to challenge them on direct appeal. Therefore, the PCR court's rejection of this claim was not an unreasonable application of *Strickland*. Claim 10 is denied.

## EVIDENTIARY DEVELOPMENT

Petitioner seeks an evidentiary hearing, discovery, and expansion of the record with respect to Claims 2 and 5.[12] (Dkt. 157 at 104-07.) Respondents counter that Petitioner was not diligent in state court and therefore is not entitled to evidentiary development. (Dkt. 169

---

[12]  Petitioner indicates that he also seeks evidentiary development with respect to Claim 3. (*See* Dkt. 171 at 21-22.) However, because he has neither identified the development he seeks nor argued in support of such development, his request is denied.

at 47-49.)   As set forth below, the Court concludes that Petitioner is not entitled to the requested evidentiary development.

**Legal Principles**

In evaluating Petitioner's requests, the Court applies the relevant provisions of 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Section 2254(e)(2) similarly limits a petitioner's ability to present new evidence through a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases.   *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (conditions of § 2254(e)(2) generally apply to petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing) (citing *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (per curiam)).

The Supreme Court has interpreted subsection (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).   A hearing is not barred, however, when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Id.*; *see Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999).

The diligence assessment is an objective one, requiring a determination of whether

- 27 -

a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435.  For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney fails to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *See id*. at 438-39, 442; *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002).  Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see also Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir.), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001).  The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps.  *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (counsel failed to present affidavits of family members that were easily obtainable without court order and with minimal expense).

Pursuant to *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254 (e)(2), a federal district court must hold an evidentiary hearing in a § 2254 case when: the facts are in dispute; the petitioner "alleges facts which, if proved, would entitle him to relief"; and the state court has not "reliably found the relevant facts" after a "full and fair evidentiary hearing."  *See also Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (upholding the denial of a hearing when petitioner's allegations were insufficient to satisfy the governing legal standard); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (hearing not required when claim must be resolved on state court record or claim is based on non-specific conclusory allegations); *see also Landrigan*, 127 S. Ct. at 1940 ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.").

**Discussion**

- 28 -

1        **Claim 2**

2        Petitioner seeks discovery, expansion of the record, and an evidentiary hearing to

3   develop the factual basis for this claim, which, as presently constituted, includes the

4   allegation that he was incompetent to make the decision to proceed with an insanity defense.

5   (Dkt. 157 at 104-05.)   As previously noted, Petitioner did not present this claim of

6   incompetence in state court and it has been procedurally defaulted.  With respect to the

7   remaining allegations in Claim 2, their merits can be resolved without further evidentiary

8   development.  The record adequately details Petitioner's mental condition.  In addition, for

9   the reasons set forth above – i.e., because Petitioner was found to be competent to stand trial

10  and to waive his constitutional rights and because the pursuit of an insanity defense does not

11  constitute such a waiver – Claim 2 is plainly meritless and therefore a hearing in

12  unnecessary.  *See Landrigan*, 127 S. Ct. at 1940.  Petitioner has neither identified any

13  disputed facts nor "allege[d] facts which, if proved, would entitle him to relief." *Townsend*,

14  372 U.S. at 312-13.  Therefore, because his IAC claims can be "resolved by reference to the

15  state court record," Petitioner is not entitled to evidentiary development on Claim 2. *Totten*

16  *v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998); *see also Griffey v. Lindsey*, 345 F.3d 1058,

17  1067 (9th Cir. 2003); *Cardwell v. Greene*, 152 F.3d 331, 338-39 (4th Cir. 1998).

18       **Claim 5**

19       Petitioner seeks a variety of evidentiary development with respect to his claim of

20  cumulative error based on ineffective assistance of appellate counsel, including discovery;

21  expansion of the record with the tape, digital tape, and transcript of counsel's oral argument

22  on direct appeal; and an evidentiary hearing on each individual claim of ineffective

23  assistance. (Dkt. 157 at 106-07.)  He is not entitled to this evidentiary development.

24       First, Petitioner was not diligent in developing his claims of ineffective assistance of

25  appellate counsel in state court.  During the PCR proceedings, he did not request an

26  evidentiary hearing on the claims, nor did he provide affidavits or records to support the

27  claims.  Furthermore, Petitioner's claims of ineffective assistance of appellate counsel are

28

1  properly resolved on the record.  *See Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1985) ("it

2  is the exceptional case" where a claim of appellate IAC "could not be resolved on the record

3  alone").  Again, Petitioner has neither identified any disputed facts nor alleged facts that

4  would entitle him to relief.

5                              **CERTIFICATE OF APPEALABILITY**

6            In the event Petitioner appeals from this Court's judgment, and in the interests of

7  conserving scarce Criminal Justice Act funds that might be consumed drafting an application

8  for a certificate of appealability to this Court, the Court on its own initiative has evaluated

9  the claims within the petition for suitability for the issuance of a certificate of appealability.

10  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

11           Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal

12  is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a

13  certificate of appealability ("COA") or state the reasons why such a certificate should not

14  issue.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

15  made a substantial showing of the denial of a constitutional right."  This showing can be

16  established by demonstrating that "reasonable jurists could debate whether (or, for that

17  matter, agree that) the petition should have been resolved in a different manner" or that the

18  issues were "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529

19  U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For

20  procedural rulings, a COA will issue only if reasonable jurists could debate whether the

21  petition states a valid claim of the denial of a constitutional right and whether the court's

22  procedural ruling was correct.  *Id.*

23           The Court finds that reasonable jurists, applying the deferential standard of review set

24  forth in the AEDPA, which requires this Court to evaluate state court decisions in the light

25  of clearly established federal law as determined by the United States Supreme Court, could

26  not debate its resolution of the merits of Petitioner's claims as set forth in this Order.

27  Further, for the reasons stated in the Court's Order regarding the procedural status of

28

Petitioner's claims filed on June 6, 2006 (Dkt. 151), the Court declines to issue a COA with respect to any claims that were found to be procedurally barred.

**CONCLUSION**

For the reasons set forth above, Petitioner is not entitled to habeas relief. The Court further finds that an evidentiary hearing in this matter is neither warranted nor required.

Accordingly,

**IT IS ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 55) is **DENIED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** vacating the stay of execution issued by this Court on October 6, 2000.

**IT IS FURTHER ORDERED** denying a Certificate of Appealability.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to Rachelle M. Resnick, Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

DATED this 14th day of July, 2008.

Roslyn O. Silver
United States District Judge